

ENTERED
10/11/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: § <br> WINDMILL RUN ASSOCIATES, LTD. § <br> Debtor(s) § <br> § <br> § | | CASE NO: 15-80319 <br><br> CHAPTER 11 |
| WINDMILL RUN ASSOCIATES, LTD. § <br> Plaintiff(s) § <br> § <br> VS. § <br> § <br> FEDERAL NATIONAL MORTGAGE § <br> ASSOCIATION, *et al* § <br> Defendant(s) § | | ADVERSARY NO. 15-08013 |

## MEMORANDUM OPINION

This Memorandum Opinion and accompanying Order resolves Windmill Run Associates' and Fannie Mae's cross motions for reconsideration and clarification. Windmill's motion to clarify is granted and Fannie Mae's is denied.

## Background

Windmill owned and managed a low-income apartment complex in Sweeny, Texas, which was financed through a loan from Fannie Mae. *In re Windmill Run Assoc., Ltd*., 566 B.R. 396, 402 (Bankr. S.D. Tex. 2017). Although Windmill remained current on its mortgage payments, a dispute arose between the parties regarding necessary repairs at the apartment complex that culminated in Fannie Mae foreclosing on the property and Windmill filing for Chapter 11 bankruptcy. *Id*. In 2016, the parties engaged in a lengthy trial but ultimately agreed to abstain from pursuing attorney's fees and costs until after the trial concluded. (ECF No. 251 at 2). The Court held that Fannie Mae was the only party entitled to recover attorney's fees and costs pursuant to its 11 U.S.C. § 506(b) motion, awarding Fannie Mae $199,430.25 in attorney's

fees and $10,808.67 in costs. (ECF No. 251 at 11). Windmill appealed the outcome of the trial to the district court; however, in the interim, both parties filed motions to reconsider and clarify the Court's Order awarding attorney's fees. (*See generally* ECF No. 255; ECF No. 260).

## Jurisdiction

The district court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Analysis

Windmill and Fannie Mae urge the Court to address the issue of *when* the attorney's fee award should be paid to Fannie Mae. The parties agree that, if the fee award is subject to Windmill's chapter 11 plan, Fannie Mae's allowed claim will not be adjusted until the award is final and no longer subject to appeal. (Case No. 15-80319, ECF No. 264 at 3-4 (defining an allowed claim as "a [c]laim or [i]nterest . . . which is no longer subject to appeal or certiorari proceeding.")). However, Windmill's and Fannie Mae's positions diverge regarding whether the plan applies to the fee award at all. Fannie Mae claims that the language of the confirmed plan and Bankruptcy Code remove the fee award from Windmill's Chapter 11 plan, thus making the award immediately payable. (ECF No. 260 at 2-3). Windmill argues that the fee award is subject to the terms of its chapter 11 plan and should roll into Fannie Mae's allowed claim. (ECF No. 255 at 4).

Fannie Mae claims that the language of Windmill's chapter 11 plan distinguishes between pre- and post-confirmation liabilities. Specifically, Fannie Mae points to language that prevents the plan's injunction from applying to defaults and causes of action that arise after plan confirmation. (Case No. 15-80319, ECF No. 264 at 29-30). Fannie Mae also points to § 1141(d) of the Bankruptcy Code, which limits a debtor's discharge to only those debts which arose prior

to plan confirmation.  11 U.S.C. § 1141(d)(1)(A).  In Fannie Mae's view, Windmill's chapter 11 plan cannot cover its liability under the fee award because the plan was confirmed on August 11, 2016, almost a year before the fees were awarded on August 11, 2017.  (ECF No. 260 at 6-7).

As Fannie Mae argues, "claims" ordinarily are for obligations that were in existence on the petition date.  Although Fannie Mae's security instruments were in existence on the petition date, the attorney's fees had not yet been incurred.  Nevertheless, § 506(b) removes such fees from the ordinary requirement.  Under § 506, a "claim" includes post-petition attorney's fees to over secured creditors.  The amount awarded under § 506(b) becomes part of the "claim."  *Rake v. Wade*, 508 U.S. 464, 468 (1993), *overruled on other grounds by* 11 U.S.C. § 13229(e); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1338 (11th Cir. 2000).

Unfortunately, the issue in this case is not as clearly defined as § 506(b).  Windmill's confirmed plan initially defines "claim" by initially incorporating the Bankruptcy Code's definition, but then materially alters it:

> Claim shall have the meaning given in Section 101 of the Bankruptcy Code, *to wit*, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor *in existence on or before the Filing Date*, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, secured or unsecured whether or not asserted.

(Case No. 15-80319, ECF No. 264 at 3) (emphasis added).  The Bankruptcy Code's definition of claim does not require that a right to payment be "in existence on or before the Filing Date."  11 U.S.C. § 101(5).  The use of "to wit" in the plan definition is presumably intended to regurgitate § 101(5) of the Bankruptcy Code.  However, what should the Court do when the regurgitation is itself inaccurate?  Although it is a close call, the plan's definition continues to parallel the code's definition by including matters that are "contingent" or "not asserted."  *See* 11 U.S.C. § 101(5).

The Court concludes that the "to wit" language is best read in the context of § 101(5). The language "in existence on or before the Filing Date" is interpreted to reference the contract in existence before the petition which gave rise to a future right under § 506(b).

In its Memorandum Opinion, the Court dismissed all of Fannie Mae's fees except for a portion that was related to the prosecution of its § 506(b) motion. (ECF No. 251 at 10). This decision formed Fannie Mae's entire fee award. Section 506(b) ordinarily applies during the time period between the date when the petition is filed through plan confirmation. *Rake v. Wade*, 508 U.S. 464, 468 (1993), *overruled on other grounds by* 11 U.S.C. § 13229(e); *In re T-H New Orleans Ltd.*, 116 F.3d 790, 797 (5th Cir. 1997). In this case, the plan itself allowed for a § 506 award to be determined post-confirmation:

> [Fannie Mae] must file its motion for allowance and payment of interest, fees, costs, and charges under Section 506(b) of the Bankruptcy Code within thirty (30) days after the Effective date of the Plan, and the Debtor and the Dip Lender reserve all rights in respect of any defenses or objections to such motion including laches and timeliness, and any and all defenses whether thy have been previously disclosed, filed, or heard by the Court.

(Case No. 15-80319, ECF No. 264 at 14). The fees that were awarded arose through litigation which was required in order to establish the amount of Fannie Mae's claim. If the Court were to accept Fannie Mae's position that the fees were actually incurred solely for post-confirmation issues, then they would not be covered under § 506(b) at all. The Debtor's plan itself preserves § 506(b) claims for post-confirmation determination, accordingly the Court must import *all* of § 506(b). Specifically, § 506(b) states, "there shall be allowed to the holder of such claim. . . any reasonable fees, costs, or charges provided for *under the agreement* . . . under which such claim arose." 11 U.S.C. § 506(b) (emphasis added). Section 506(b) itself refers back to the initial pre-petition agreement between the parties to import the award into the claim rather than as a

separate post-petition award as Fannie Mae argues. In order to be consistent with the language of § 506(b), the Court must incorporate the § 506(b) award into the claim.

## Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **October 11, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE